JUSTICE PATTERSON delivered the opinion of the Court.
**131 This appeal raises an issue of first impression in this Court: whether a parent has the right to represent himself or herself in an action to terminate parental rights pursuant to N.J.S.A. 30:4C-15 to -20.
Plaintiff New Jersey Division of Child Protection and Permanency (Division) brought a guardianship action in the Family Part against R.L.M. and J.J., seeking to terminate their parental rights to their daughter R.A.J. At a case management conference early in the proceeding, J.J. informed the trial court that he wanted to represent himself. Minutes later, J.J. changed course and requested that the court assign counsel to represent him. J.J. did not reassert the right to represent himself until the guardianship trial was underway. Reasoning that the dismissal of J.J.'s counsel in the midst of trial would suspend the proceedings, the court denied *939 that request. At the trial's conclusion, the court determined that the Division had met its burden of proof by clear and convincing evidence as to all four prongs of N.J.S.A. 30:4C-15.1(a)'s best-interests standard, and terminated the parental rights of R.L.M. and J.J. An Appellate Division panel affirmed the trial court's termination of both parents' parental rights, rejecting J.J.'s constitutional claim to a right of self-representation. We granted J.J.'s petition for certification.
We reaffirm New Jersey's longstanding adherence to the principle that a competent litigant may represent himself or herself in a matter in which he or she is a party, subject to exceptions set forth in statutes, court rules, and case law. In re Civil Commitment of D.Y., 218 N.J. 359, 365, 95 A.3d 157 (2014). No such exception is prescribed by the statute that governs this case. N.J.S.A. 30:4C-15.4 provides for the assignment of counsel, at the parent's request, to represent an indigent parent in an action to terminate parental rights. The statute, however, does not mandate such representation for any parent, whether indigent or not. Although a parent's decision to appear pro se in this complex and consequential litigation represents poor strategy in all but the **132 rarest case, N.J.S.A. 30:4C-15.4 plainly authorizes that parent to proceed unrepresented.
The parent's right of self-representation, however, is by no means absolute. That right must be exercised in a manner that permits a full and fair adjudication of the dispute and a prompt and equitable permanency determination for the child. The parent must inform the court of his or her intention to appear pro se in a timely manner, so as to minimize delay of the proceedings. He or she must invoke the right of self-representation clearly and unequivocally. In the event of such an invocation, the court should conduct an inquiry "to ensure the parent understands the nature of the proceeding as well as the problems she may face if she chooses to represent herself." In re Adoption of a Child by J.E.V. and D.G.V., 226 N.J. 90, 114, 141 A.3d 254 (2016). The judge should take appropriate steps, which may include the appointment of standby counsel, so that the parent's decision to represent himself or herself does not disrupt the trial.
In this case, the court acted well within its discretion. Although J.J. initially asserted his right to represent himself in a timely and clear manner, he immediately withdrew his request and sought the appointment of assigned counsel. He did not reassert his right to represent himself until the trial was in progress. At that late stage, the trial court was no longer in a position to grant J.J.'s application without suspending the trial to the detriment of the child at the heart of this case. The court properly denied J.J.'s untimely and ambivalent claim.
Accordingly, we affirm as modified the Appellate Division panel's determination.
I.
A.
R.L.M. is the biological mother of six children. J.J. is the biological father of R.L.M.'s two youngest children, a son, R.J., and a daughter, R.A.J., who is the subject of this appeal.
**133 The guardianship action that gave rise to this appeal is one in a series of actions instituted by the Division with respect to the six children. Over the course of several years, the Family Part terminated R.L.M.'s parental rights to her five older children and terminated J.J.'s parental rights to his son R.J. The five older children were adopted, two by one family and three by another.
The record in this appeal indicates that, in the prior proceeding involving R.J., the *940 Family Part made no finding that J.J. abused or neglected his son. Nonetheless, J.J. insisted in this matter that, in the earlier proceeding, someone had mistakenly noted in the record that he had abused or neglected R.J. He repeatedly expressed his belief that the Division sought to terminate his parental rights to R.A.J. based on an erroneous finding that he had abused or neglected R.J.
R.A.J. was born in 2013. Immediately after her birth, the Division conducted an emergency removal of R.A.J. pursuant to N.J.S.A. 9:6-8.29. R.A.J. was placed with the same resource family who then cared for and later adopted three of her older siblings. The Division filed a verified complaint seeking custody of R.A.J. The court granted that application.
In May 2014, the court conducted a factfinding hearing. It made no finding that either R.L.M. or J.J. had abused or neglected R.A.J. The court concluded that both parents required services and ordered psychological, psychiatric, and substance abuse evaluations. A psychologist conducted a mental health evaluation of J.J. and reported his findings to counsel and the court. J.J. was granted visitation rights with respect to R.A.J. He visited her nine times between May and December 2014.
Following a permanency hearing, in which J.J. was represented by appointed counsel, the court found that neither R.L.M. nor J.J. had participated in sufficient services to remedy the issues that had led to the Division's action. The court adopted the Division's recommendation of a permanency plan of termination of parental rights, to be followed by R.A.J.'s adoption by her resource family.
**134 B.
The Division filed a petition for guardianship pursuant to N.J.S.A. 30:4C-15 to -20, seeking the termination of the parental rights of R.L.M. and J.J. with respect to R.A.J.
Accompanied by the appointed counsel who had represented him in the prior action regarding R.A.J., J.J. attended the first case management conference in the action to terminate his parental rights. He told the court that he did not want an attorney appointed for him, because he had "some motions that I want to put in myself." J.J. explained to the court that his uncle, a paralegal, was preparing a package of applications, among them an application for the complaint to "be dismissed or whatever the case may be." The judge conducting the conference told J.J., "you have the right to be represented by counsel, and the right to represent yourself." She admonished him that "[n]ot having an attorney is a big mistake." J.J. responded that he was "not satisfied" with his attorney, citing the court's decision to proceed to a permanency determination as evidence that his attorney was deficient. The judge reiterated that J.J. had the right to represent himself, "as long as I've explained to you what your rights are and I've impressed upon you the mistake that you're making in not having an attorney."
As the case management conference continued, J.J.'s previously assigned counsel continued to speak on his behalf. The judge, evidently assuming J.J. had decided to represent himself, advised J.J. that he would have to schedule his own evaluations by experts as the case moved forward. Stating that he intended to show the judge he was "going to cooperate," J.J. responded that if the judge would give him the form to request assignment of counsel for the guardianship action, he would fill it out. The judge noted that her role was to explain to J.J. "what your options are," and that "[t]he choices that you make are yours." J.J. evidently applied for appointment of counsel, because his assigned attorney *941 continued to represent him as the guardianship action went forward. **135 At the second case management conference, J.J., citing illness, left the courtroom before the conference began.
At the third case management conference, conducted by a different judge, J.J.'s counsel advised the court that J.J. wanted him to move to have a finding of abuse or neglect "taken out of his record from a prior case." The court instructed J.J.'s counsel to file a motion. Later in the conference, J.J. raised the subject of his representation. Rather than assert his right of self-representation, J.J. stated that he wanted to retain substitute counsel. He represented to the court that he had the resources to retain a private attorney, that he had consulted another lawyer who had declined to take his case, and that he intended to hire a different attorney. The court instructed J.J. to arrange for any substitute counsel to confirm the representation in writing. The judge noted that J.J.'s assigned counsel would continue to represent him pending any substitution of attorney.
J.J. did not retain private counsel. When the court held its final case management conference and the trial judge conducted the pretrial conference, J.J.'s assigned counsel represented him.[1] At both conferences, J.J. declined to appear in court.
C.
On the first day of the trial, J.J. appeared in court with his assigned counsel. Unbeknownst to his attorney, J.J. had prepared several motions, one designated as a "motion for new counsel." J.J. told the trial court that he had "disput[ed]" with his attorney for six or seven months and did not want the attorney to represent him. J.J. cited his attorney's refusal to correct the allegedly erroneous record of the proceeding regarding his son, R.J. Although **136 the trial court and the Division's counsel confirmed that the current matter was unrelated to any issues in the earlier proceeding involving his son R.J., J.J. insisted that his attorney improperly refused to follow his instructions and reopen the prior matter.
In response to the Division's counsel's observation that J.J.'s application included a request to have new counsel appointed or to represent himself, the trial court asked J.J.'s attorney whether he sought to withdraw from the case. J.J.'s counsel confirmed that he did not seek to be relieved as counsel and that he was prepared to try the case. The trial court denied J.J.'s request to discharge his attorney, noting counsel's consistent preparation and efforts to serve J.J.'s interests in difficult circumstances.
Later that day, J.J. interrupted his counsel's cross-examination of the caseworker assigned by the Division to handle the matter. He stated that he "object[ed]" to his counsel's questions about R.A.J., which he considered "outrageous," and insisted that his attorney should instead focus on the question of whether J.J. had been found to have abused or neglected his son, R.J. He stated at one point that he "would like to have different representation," and at another point that he wanted to represent himself. The trial judge told J.J. that he would not "allow you to do that at this time, sir," and confirmed that J.J.'s assigned counsel would continue to represent him.
The following day, the trial judge placed on the record a detailed statement of the *942 reasons for his determination. The judge noted that J.J.'s application to replace his assigned counsel was premised on J.J.'s belief that his assigned counsel had improperly declined to reopen the Division's action regarding J.J.'s son, R.J. The trial court observed that the dispute between J.J. and his attorney arose from J.J.'s failure to appear in court on numerous occasions and to communicate with his attorney, and noted assigned counsel's consistently diligent efforts on J.J.'s behalf. The court found that J.J.'s "request at this late date would only serve **137 to delay the proceedings and unduly interfere with the minor child's attempt to gain permanency in this matter."
Again citing his attorney's failure to file an application relating to the record of the prior case, J.J. interrupted the examination of another witness to demand again that his counsel be dismissed. The trial judge denied the application, noting that the trial was in progress. The judge acknowledged J.J.'s "right to terminate [his] attorney," but stated that based on J.J.'s conduct over several months, he was unconvinced that J.J. could represent himself during the remainder of the trial. The judge noted his obligation "to balance so many issues with respect to terminating this trial right now to allow new counsel to substitute in and come up to speed." He ruled that suspending the trial would be "unfair to the interest of the minor child ... here at stake."
J.J. responded that if he were to "take over [the] case," he would dispute none of the Division's contentions regarding R.A.J. and would attempt only to establish that he was "innocent of the abuse and neglect" of his son, R.J. The court again denied the application, and J.J. left the courtroom. Because of illness, he did not attend court the following day. On the final day of the trial, J.J. briefly appeared in court but declined to testify and was absent for the remainder of the trial.
In a detailed written opinion substantially based on his assessment of the credibility of fact and expert witnesses, the trial judge found that the Division satisfied by clear and convincing evidence all four prongs of N.J.S.A. 30:4C-15.1(a)'s best-interests standard. The judge concluded that the best interests of R.A.J. necessitated the termination of the parental rights of R.L.M. and J.J., and awarded guardianship of R.A.J. to the Division.
D.
R.L.M. and J.J. appealed the trial court's determination. Both defendants challenged the trial court's best-interests findings under N.J.S.A. 30:4C-15.1(a). Additionally, J.J. contended that he **138 was entitled to a new trial because the trial court had denied his application to represent himself.
An Appellate Division panel affirmed the trial court's determination. DCPP v. R.L.M., 450 N.J. Super. 131, 151, 160 A.3d 714 (App. Div. 2017). Substantially for the reasons stated by the trial court, the panel concurred with the court's conclusion that the Division had met its burden under the best-interests test of N.J.S.A. 30:4C-15.1(a). Id. at 134, 160 A.3d 714.
The panel addressed J.J.'s self-representation claim, id. at 136-51, 160 A.3d 714, and held that any constitutional aspect of that claim must derive from principles of procedural due process because the Sixth Amendment of the United States Constitution confers no right of self-representation on a non-criminal defendant, id. at 142-43, 160 A.3d 714. The panel reasoned that in contrast to a parent's representation by counsel in family proceedings, which reduces the risk of error, self-representation compounds such a risk, thereby undermining *943 the trial court's effort to achieve a fair result. Id. at 144-45, 160 A.3d 714.
The panel also addressed issues that J.J. did not raise, such as potential statutory and court-rule-based sources of a right to self-representation. Id. at 147, 160 A.3d 714. The panel found no explicit right of self-representation in N.J.S.A. 30:4C-15.4 and concluded that Rule 1:21-1(a)'s general grant of a right of self-representation to competent litigants in matters that directly affect them could be relaxed pursuant to Rule 1:1-2(a). Id. at 148, 160 A.3d 714. The panel noted that, in any event, J.J. effectively withdrew his initial request to represent himself when he appeared at subsequent proceedings and stated that he would hire substitute counsel. Id. at 150-51, 160 A.3d 714.
We granted J.J.'s petition for certification, in which he claimed only that he was entitled to a new trial by virtue of the trial court's denial of his request to represent himself. 231 N.J. 414, 176 A.3d 219 (2017). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU) to appear as amicus curiae.
**139 II.
A.
J.J. contends that, in a termination of parental rights action, a parent has a fundamental right of self-representation protected by substantive due process. In the alternative, he argues that the Court should find a right of self-representation based on N.J.S.A. 30:4C-15.4, without reaching any constitutional issue. J.J. construes the plain language of N.J.S.A. 30:4C-15.4 to permit a parent in a termination of parental rights proceeding to represent himself or herself. He claims that he had no obligation to assert his right of self-representation unequivocally and timely, but argues that if he were subject to such a requirement, his initial claim of that right was clear and unmistakable. Finally, J.J. asserts a claim of ineffective assistance of appellate counsel based on his counsel's reliance on a procedural due process claim, rather than substantive due process or statutory arguments. He asks the Court to devise a procedure for the adjudication of such claims before a specially constituted Appellate Division panel.
B.
The Division disputes J.J.'s claim of a substantive due process right of self-representation. It contends that a right of self-representation is not deeply rooted in the history of the United States or New Jersey, and that a litigant's appearance pro se may undermine the court's effort to reach a just result in a termination of parental rights case. The Division asserts that any right of self-representation must be asserted unequivocally, timely, and in a manner that does not disrupt the proceedings. It argues that J.J. equivocally articulated his intent to represent himself and then withdrew his request by seeking the assignment of counsel. Finally, the Division urges the Court to reject J.J.'s claim of ineffective assistance of appellate counsel, because any constitutional or statutory claim made by J.J. would fail in light of his ambiguous and untimely invocation of the right of self-representation.
**140 C.
Contending that a parent's self-representation in a termination of parental rights proceeding raises the specter of an erroneous decision that may harm the child at issue, the Law Guardian urges the Court to affirm the Appellate Division's determination. The Law Guardian contends that J.J.'s self-representation during the guardianship trial would have imposed an inequitable hardship on R.A.J. The Law Guardian states that J.J. presented his *944 arguments in an ambiguous and irrational manner premised on his mistaken belief that the guardianship proceedings in this case arose from an erroneous abuse or neglect finding with respect to a different child. Finally, the Law Guardian characterizes the evidence that J.J. was unable to parent R.A.J. as overwhelming and asserts that the trial court correctly found that the Division met its burden under N.J.S.A. 30:4C-15.1.
D.
Amicus curiae the ACLU argues that procedural due process principles warrant recognition of a parent's right of self-representation in a termination of parental rights proceeding in light of the prejudice imposed on a parent forced to accept the unwelcome services of an attorney, the trial court's role as factfinder in guardianship cases, and the Law Guardian's advocacy on the child's behalf. The ACLU also asserts that parents have a substantive due process right of self-representation in termination of parental rights cases. Relying on D.Y., the ACLU contends that N.J.S.A. 30:4C-15.4 establishes a parent's right of self-representation in a termination of parental rights proceeding because the Legislature envisioned the appointment of assigned counsel for an indigent parent only at the parent's request.
III.
A.
This appeal turns on a single issue: whether J.J. was entitled to represent himself in the Division's action to terminate his parental **141 rights. Although that precise question has not been addressed in any previous decision of this Court, we recently recognized a self-representation right in a different setting: an involuntary commitment hearing pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. D.Y., 218 N.J. at 384, 95 A.3d 157.
In D.Y., the individual subject to civil commitment was denied the opportunity to appear pro se in his SVPA commitment proceeding. On appeal, he asserted that he had a constitutional right to represent himself before the SVPA court, based on the Sixth Amendment right of self-representation in criminal cases recognized in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the Fourteenth Amendment procedural due process factors articulated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). An Appellate Division panel rejected both constitutional arguments and affirmed the SVPA court's commitment order. In re Civil Commitment of D.Y., 426 N.J. Super. 436, 441-47, 45 A.3d 394 (App. Div. 2012).
We reversed the Appellate Division's determination on statutory grounds and did not reach the constitutional issues raised by D.Y. in support of his self-representation claim. D.Y., 218 N.J. at 379-84, 386, 95 A.3d 157. We noted that the right of self-representation, derived from the English common law and dating back to New Jersey's colonial past, is deeply established in our State. Id. at 374-76, 95 A.3d 157. As stated in D.Y., "competent litigants in New Jersey have long been permitted to represent themselves in civil proceedings, with specific exceptions identified in statutes, court rules, and case law." Id. at 365, 95 A.3d 157. Moreover, as we observed in D.Y., our courts routinely encounter pro se trial and appellate litigants in civil, probate, and family disputes. Id. at 376, 95 A.3d 157. Indeed, our court rule governing qualifications to practice law recognizes that "[a] person not qualif[ied] to practice" pursuant to the rule's provisions "shall nonetheless be permitted to appear and prosecute or defend an action in any court *945 of this **142 State if the person ... is a real party in interest to the action or the guardian of the party." R. 1:21-1(a).
As we acknowledged in D.Y., however, we have never viewed a litigant's right of self-representation to be absolute. 218 N.J. at 377-79, 95 A.3d 157. As stated in D.Y., self-representation may undermine the litigant's position in the case, and an obstructive pro se party can impede -- if not derail entirely -- the progress of the case. Id. at 377, 95 A.3d 157. Even if the litigant strives to cooperate with the court, he or she may struggle to comprehend the proceedings and participate as the case unfolds. Ibid.; see also State v. Reddish, 181 N.J. 553, 587, 859 A.2d 1173 (2004) (observing that notwithstanding criminal defendant's Sixth Amendment right of self-representation, there may be circumstances in which "the defendant will be required to cede control of his defense to protect the integrity of the State's interest in fair trials and permit courts to ensure that their judgments meet the high level of reliability demanded by the Constitution"). We recognized in D.Y. that the appointment of standby counsel, long used in criminal cases involving pro se defendants, may be "an effective solution to these challenges." 218 N.J. at 377, 95 A.3d 157.
Against that backdrop, we analyzed the SVPA's provisions regarding the representation of individuals subject to civil commitment, N.J.S.A. 30:4-27.29(c) and -27.31(a). Id. at 379-84, 95 A.3d 157. We noted that among other enumerated rights, the SVPA affords to such an individual the right to be represented by counsel, or, if indigent, to the appointment of counsel at the State's expense. Id. at 382, 95 A.3d 157 (citing N.J.S.A. 30:4-27.31(a) ). We considered the SVPA's mandate that "[a] person subject to involuntary commitment shall have counsel present at the hearing and shall not be permitted to appear at the hearing without counsel." Id. at 383, 95 A.3d 157 (alteration in original) (quoting N.J.S.A. 30:4-27.29(c) ). We found no legislative intent in those provisions to bar an individual facing SVPA commitment from representing himself or herself, as long as standby counsel is "present throughout the hearing and available to assist [the individual facing **143 commitment] if needed." Id. at 384, 95 A.3d 157. We concluded that when a person subject to civil commitment appears pro se with standby counsel at his or her side, the statutory mandate to have "counsel present" is satisfied. Ibid.
In D.Y., we set forth three principles to guide trial courts confronting claims of self-representation in the SVPA setting.
First, any decision by an individual in an SVPA civil commitment proceeding to waive his or her statutory right to full representation by counsel "should be clearly and unequivocally stated to the trial court," and the judge should be satisfied that the waiver "is knowing, intelligent and voluntary." Ibid. We required an inquiry to ensure that the individual facing civil commitment "is aware of his or her statutory right to be fully represented by counsel, and that he or she understands the importance of representation by an attorney in such a complex case." Id. at 384-85, 95 A.3d 157 (citing State v. Crisafi, 128 N.J. 499, 511-12, 608 A.2d 317 (1992) ). The scope of the required colloquy was later refined in J.E.V.; there, we held that when a parent seeks to proceed unrepresented in a contested adoption, the court "should conduct an abbreviated yet meaningful colloquy to ensure the parent understands the nature of the proceeding as well as the problems she may face if she chooses to represent herself." 226 N.J. at 114, 141 A.3d 254 (comparing abbreviated yet meaningful colloquy to the "more in-depth inquiry required before defendant in criminal case may waive right to counsel" set *946 forth in Crisafi, 128 N.J. at 511-12, 608 A.2d 317 ).
Second, the specific issues to be decided in the SVPA proceeding should shape the role of standby counsel in a given case. D.Y., 218 N.J. at 385, 95 A.3d 157. A pro se litigant is unlikely to have the skills to defend himself or herself in a civil commitment hearing pursuant to the SVPA, in which psychiatric or psychological experts typically testify. Ibid. Standby counsel "serves as a resource, explaining the court's rulings and instructions to his or her client, guiding the committee through each stage of the hearing, and minimizing disruption and delay." Ibid.
**144 Finally, we reiterated that "the right of self-representation is not a license to abuse the dignity of the courtroom." Ibid. (quoting Faretta, 422 U.S. at 834 n.46, 95 S.Ct. 2525 ). We underscored the SVPA court's authority to take appropriate action, including directing standby counsel to assume full representation of the individual contesting civil commitment, in the event that the self-representing litigant disrupts the hearing. Id. at 385-86, 95 A.3d 157.
We held, subject to those guidelines, that D.Y. had the right to represent himself at his SVPA civil commitment hearing, and we remanded to the SVPA court for a new hearing. Id. at 386, 95 A.3d 157.
B.
1.
In this matter, J.J. asserted a right of self-representation in a proceeding distinct from the civil commitment hearing at issue in D.Y. but equally challenging to our judiciary: an action to determine whether the best interests of a child warrant the termination of parental rights.
As we have observed, "[t]ermination of parental rights permanently cuts off the relationship between children and their biological parents. 'Few forms of state action are both so severe and so irreversible.' " In re Guardianship of J.C., 129 N.J. 1, 10, 608 A.2d 1312 (1992) (quoting Santosky v. Kramer, 455 U.S. 745, 759, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ). When our courts undertake those determinations, they "fully recognize the fundamental nature of parental rights and the importance of family integrity." In re Guardianship of K.H.O., 161 N.J. 337, 347, 736 A.2d 1246 (1999). These sensitive decisions "are guided by the principle that 'clearly favors keeping children with their natural parents and resolving care and custody problems within the family.' " DYFS v. I.S., 202 N.J. 145, 165, 996 A.2d 986 (2010) (quoting J.C., 129 N.J. at 7-8, 608 A.2d 1312 ). That preference for **145 family reunification "continues when a child is placed in foster care." K.H.O., 161 N.J. at 347, 736 A.2d 1246.
"To be sure, the constitutional imperative of preserving familial integrity is not absolute." Moriarty v. Bradt, 177 N.J. 84, 102, 827 A.2d 203 (2003) (citing Wisconsin v. Yoder, 406 U.S. 205, 233-34, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ; Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) ; V.C. v. M.J.B., 163 N.J. 200, 218, 748 A.2d 539 (2000) ). "Balanced against the constitutional protection of family rights is the State's parens patriae responsibility to protect the welfare of children." J.C., 129 N.J. at 10, 608 A.2d 1312. Consequently, "children must be protected from serious physical and emotional injury and the court may examine whether 'it is in the child's best interest to preserve the family unit' or sever the parent-child relationship." DYFS v. L.J.D., 428 N.J. Super. 451, 478, 54 A.3d 293 (App. Div. 2012) (quoting N.J.S.A. 30:4C-1(a) ).
In a termination of parental rights case, the Division has the burden to prove by clear and convincing evidence that:
*947 (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
(4) Termination of parental rights will not do more harm than good.
[ N.J.S.A. 30:4C-15.1(a).]
The four statutory factors "are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348, 736 A.2d 1246. The relevant considerations "are 'extremely fact sensitive' and require particularized evidence that [addresses] the specific circumstances in the given **146 case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139, 631 A.2d 928 (1993) ).
In a termination of parental rights trial, the evidence often takes the form of expert opinion testimony by psychiatrists, psychologists, and other mental health professionals. See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 30, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) ("[T]he ultimate issues with which a termination hearing deals are not always simple .... Expert medical and psychiatric testimony, which few parents are equipped to understand and fewer still to confute, is sometimes presented."); Kinsella v. Kinsella, 150 N.J. 276, 318, 696 A.2d 556 (1997) ("In implementing the 'best-interest-of-the-child' standard, courts rely heavily on the expertise of psychologists and other mental health professionals."); cf. J.E.V., 226 N.J. at 109, 141 A.3d 254 ("The issues [in contested adoption proceedings] are not simple. They may involve complicated, expert medical and psychological evidence.").
The Family Part judge is charged with advancing the public policy of achieving a timely, permanent placement for the child. As the Legislature has declared, "each child placed outside his home by the State has the need for permanency," whether by family reunification, if it can be accomplished without endangering the child's health or safety; by adoption; or by an alternative permanent placement. N.J.S.A. 30:4C-1(f). We have recognized that in guardianship and adoption cases, "the child's need for permanency and stability emerges as a central factor." K.H.O., 161 N.J. at 357, 736 A.2d 1246 ; see also J.C., 129 N.J. at 26, 608 A.2d 1312 ("Because ... children have an essential and overriding interest in stability and permanency, it is inimical to their welfare that their legal status remain unresolved."); L.J.D., 428 N.J. Super. at 483, 54 A.3d 293 ("[C]hildren must not languish indefinitely in foster care while a birth parent attempts to correct the conditions that resulted in an out-of-home placement." (quoting DYFS v. S.F., 392 N.J. Super. 201, 210, 920 A.2d 652 (App. Div. 2007) ) ). Given the impact of a trial delay or interruption on a child awaiting permanency, Family Part judges conducting termination **147 of parental rights proceedings must be mindful of the need for prompt determination of the difficult issues before them. *948 In short, J.J.'s self-representation claim arose in a setting implicating several compelling interests -- a parent's right to raise his or her child, the State's parens patriae responsibility, and a child's urgent need for a safe and permanent home. The Family Part judge was required to consider complex fact and expert evidence and to make a fair and expeditious decision based on that evidence.
2.
In a 1999 amendment to Title 30's provisions addressing actions to terminate parental rights, the Legislature addressed "legal representation of children and indigent parents in termination of parental rights proceedings." S. Women's Issues, Children & Family Servs. Comm. Statement to S. 1705 4 (Mar. 15, 1999). As amended, the statute provides that,
(a) [i]n any action concerning the termination of parental rights filed pursuant to [ N.J.S.A. 30:4C-15 ], the court shall provide the respondent parent with notice of the right to retain and consult with legal counsel. If the parent appears before the court, is indigent and requests counsel, the court shall appoint the Office of the Public Defender to represent the parent.
....
Nothing in this section shall be construed to preclude the parent from retaining private counsel.
(b) A child who is the subject of an application for the termination of parental rights pursuant to [ N.J.S.A. 30:4C-15 ] shall be represented by a law guardian as defined in [ N.J.S.A. 9:6-8.21 ].
[ N.J.S.A. 30:4C-15.4(a) to (b).]
We discern the Legislature's intent from the statute's plain language. In re Young, 202 N.J. 50, 63, 995 A.2d 826 (2010) ("When interpreting a statute, our main objective is to further the Legislature's intent. To discern the Legislature's intent, courts first turn to the plain language of the statute in question." (citations omitted) ); DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ("It is not the function of this Court to 'rewrite a plainly-written enactment of the Legislature [ ]or presume that **148 the Legislature intended something other than that expressed by way of the plain language.' " (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002) ) ). The Legislature clearly envisioned that an indigent parent would have access to appointed counsel in a termination of parental rights proceeding. N.J.S.A. 30:4C-15.4(a). There is, however, nothing mandatory about the statute's discussion of the assignment of counsel; if an indigent parent does not apply for an assignment, no attorney will be appointed to act on his or her behalf. Ibid. Similarly, a parent who is not indigent is free to retain private counsel, but is not required to do so. Ibid. There is no language analogous to the SVPA's requirement that an individual subject to SVPA civil commitment have "counsel present," let alone a requirement that the parent be fully represented by a lawyer. Compare N.J.S.A. 30:4C-15.4, with N.J.S.A. 30:4-27.29(c).
The statute expressly provides that a child who is the subject of a termination of parental rights action must be represented by the Law Guardian. N.J.S.A. 30:4C-15.4(b). Notably, the Legislature used no such mandatory language when it authorized the assignment of counsel to indigent parents in termination of parental rights actions. "[W]here [the Legislature] includes particular language in one section of the statute but omits it in another section of the same [a]ct, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate *949 inclusion or exclusion." DYFS v. A.L., 213 N.J. 1, 21, 59 A.3d 576 (2013) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ). Thus, when it enacted N.J.S.A. 30:4C-15.4, the Legislature plainly intended that legal representation be required only for the child at the center of a termination of parental rights action and envisioned that a parent could elect to appear pro se.
C.
Based on the plain language of N.J.S.A. 30:4C-15.4, we hold that a parent has the right to represent himself or herself in **149 an action to terminate his or her parental rights, with the assistance of standby counsel at the court's discretion.
That right is constrained by two important considerations: the Family Part judge's responsibility to reach an informed and fair determination of the child's best interests, and the child's interest in permanency. See J.E.V., 226 N.J. at 110, 141 A.3d 254 (observing that in contested adoption proceeding that terminates parental rights, "the public, the State, and the parent ... share an 'interest in an accurate and just decision' " (quoting Lassiter, 452 U.S. at 27, 101 S.Ct. 2153 ) ); K.H.O., 161 N.J. at 357, 736 A.2d 1246 (recognizing importance of prompt determinations due to child's need for permanency); J.C., 129 N.J. at 26, 608 A.2d 1312 (same). With a child's future in the balance, a parent's self-representation must not impede the proceedings. To assist our Family Part judges, we offer the following guidelines.
First, in light of the child's need for permanency and the court's authority to control its calendar, the parent must assert his or her right of self-representation in a timely manner. The parent does not waive his or her right of self-representation by failing to assert that right at the inception of the action. In light of the complexity of the proofs and the child's need for permanency, however, the parent should state his or her intention to proceed pro se as early as possible in the proceedings, well in advance of trial. The trial court has the discretion to reject a parent's untimely invocation of his or her right of self-representation.
Second, the parent must clearly and unequivocally invoke the right of self-representation on the record and must knowingly, intelligently, and voluntarily waive his or her right to counsel. J.E.V., 226 N.J. at 114, 141 A.3d 254. A parent's complaint about his or her attorney, or his or her plan to replace current counsel with another attorney, is not an invocation of the right of self-representation. As we have noted in a criminal appeal, "[t]he need for an unequivocal request for self-representation by a **150 defendant is a necessary prerequisite to the determination that the defendant is making a knowing and intelligent waiver of the right to counsel." State v. Figueroa, 186 N.J. 589, 593 n.1, 897 A.2d 1050 (2006) (citing Reddish, 181 N.J. at 587, 859 A.2d 1173 ; Crisafi, 128 N.J. at 509, 608 A.2d 317 ).
If the parent clearly and unequivocally invokes his or her right to proceed unrepresented, the court should engage in the "abbreviated yet meaningful colloquy" envisioned in the contested-adoption context in J.E.V., 226 N.J. at 114, 141 A.3d 254. That inquiry need not be as comprehensive as the colloquy mandated when a criminal defendant seeks to proceed unrepresented. Cf. State v. DuBois, 189 N.J. 454, 468-69, 916 A.2d 450 (2007) (enumerating topics that must be addressed in a colloquy when a criminal defendant waives the right to counsel); Reddish, 181 N.J. at 592-95, 859 A.2d 1173 (same); Crisafi, 128 N.J. at 510-12, 608 A.2d 317 (same). The court, however, *950 should be satisfied that the parent understands the nature of the termination of rights proceeding and the disadvantages of self-representation. J.E.V., 226 N.J. at 114, 141 A.3d 254.
Third, the trial court may, in its discretion, appoint standby counsel, but it is not required to do so. In contrast to the statute governing legal representation in the civil commitment hearing at issue in D.Y., the statute addressing representation in termination of parental rights proceedings does not mandate the presence of counsel. Compare N.J.S.A. 30:4-27.29(c), with N.J.S.A. 30:4C-15.4. The court, however, may conclude in a particular case that the appointment of standby counsel is essential to the effective presentation of evidence and the progress of the hearing toward a timely permanency determination. If the court appoints standby counsel, the parent remains in control of his or her case and is not obligated to follow the advice of standby counsel. D.Y., 218 N.J. at 385, 95 A.3d 157. That counsel, however, may prove to be an invaluable resource to the parent and ensure the integrity of the proceeding. Ibid.
**151 Fourth, the judge has the authority to take appropriate steps if an unrepresented parent in a termination of rights action declines to follow the court's instructions, disrespects the court or any participant in the hearing, or refuses to take part in the proceedings. Id. at 385-86, 95 A.3d 157 ; State v. Wiggins, 158 N.J. Super. 27, 33, 385 A.2d 318 (App. Div. 1978). As the Legislature has declared, the focus of a termination of parental rights proceeding is a determination of the child's best interests. N.J.S.A. 30:4C-15.1(a). No decision by a parent to proceed unrepresented should be permitted to impede a just and expeditious outcome for the child.
D.
Our recognition of a right of self-representation by parents in termination of parental rights proceedings, subject to the limitations stated above, rests on statutory grounds. Accordingly, we do not reach the question of whether parents in such proceedings have a constitutional right, based on principles of substantive or procedural due process, to represent themselves. See State v. S.B., 230 N.J. 62, 72, 165 A.3d 722 (2017) ("[W]e strive to avoid reaching constitutional questions unless required to do so ...." (quoting Comm. to Recall Robert Menendez from the Office of U.S. Senator v. Wells, 204 N.J. 79, 95-96, 7 A.3d 720 (2010) ) ); D.Y., 218 N.J. at 379, 95 A.3d 157. As we did in D.Y., 218 N.J. at 374-76, 95 A.3d 157, we recognize here that our courts have historically respected the right of competent litigants to represent themselves, with limited exceptions prescribed in statutes, court rules, and case law.[2] We do not embrace the Appellate Division's rejection of a constitutional right of self-representation in a termination of parental **152 rights action. See R.L.M., 450 N.J. Super. at 142-47, 160 A.3d 714.
IV.
With our guidelines in mind, we review the Family Part judge's denial of J.J.'s request to represent himself at trial. We defer to the court's factfinding in recognition of its "special jurisdiction and expertise in family matters." DCPP v. A.B., 231 N.J. 354, 369, 175 A.3d 942 (2017) (quoting Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998) ). We afford no *951 deference to the court's legal determination as to the scope of the right of self-representation, and review that determination de novo. See D.Y., 218 N.J. at 373, 95 A.3d 157 ; Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
We concur with the trial court that in the proceedings to terminate his parental rights to R.A.J., J.J. did not assert his right of self-representation in the timely, clear, and unequivocal manner that our law requires. Accordingly, the court's denial of J.J.'s request did not constitute error.
J.J. first raised the prospect of representing himself at an early stage of the guardianship action: the initial case management conference. He told the judge overseeing the conference that he intended to decline the appointment of counsel and that he planned to submit motions on his own behalf with the assistance of his uncle. Had J.J. maintained that position, his statements to the court would have constituted a timely invocation of his right of self-representation and would have required the court to conduct a colloquy with J.J. regarding the proceedings, the role of counsel, and the challenges that J.J. would face as a pro se litigant. See J.E.V., 226 N.J. at 114, 141 A.3d 254. Although the judge did not conduct the full inquiry that would be required for a parent to proceed on his own behalf, she confirmed to J.J. that he had the right to represent himself as long as she explained his rights to him and impressed upon him that he would make a "big mistake" were he to appear pro se. The judge confirmed that advice when **153 she told J.J. that it would be his responsibility, as a pro se litigant, to arrange evaluations by experts as the case moved forward.
J.J. then changed his mind. Promising to "cooperate," he requested the form necessary to apply for assigned counsel. Although the judge reminded J.J. of the court's obligation to explain to J.J. his options and his authority to decide how to proceed, J.J. sought and secured assigned counsel. J.J. later announced his intention to replace his counsel with a privately retained attorney, but no such counsel appeared on his behalf. Accordingly, J.J.'s pretrial invocation of his right of self-representation was unambiguously withdrawn.
J.J. did not raise the subject of self-representation with the court again until the trial was underway. Following J.J.'s interruption of witness examinations to declare his intention to either substitute new counsel or proceed on his own behalf, the trial judge advised J.J., first in brief comments and later in more detailed findings, that the court would authorize no change in his representation at that late date.
The trial court properly denied J.J.'s request during the trial to discharge his attorney and represent himself. In a matter involving complex presentations of fact and expert evidence, the court correctly concluded that the dismissal of J.J.'s counsel would bring the proceeding to a halt for an indefinite period. Such a development would have delayed a permanency determination for R.A.J., undermining the public policy that the Legislature declared. The trial judge acted appropriately to preserve the integrity of the proceeding and bring it to a conclusion, and the Appellate Division properly affirmed the trial court's determination.[3]
*952 **154 V.
The judgment of the Appellate Division is affirmed as modified.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.

At the final case management conference, J.J.'s counsel advised the court that J.J., without the assistance of his attorney, had filed a motion to recuse the judge who had conducted a prior case management conference. The court confirmed to J.J.'s counsel that J.J. was authorized to file applications only through counsel.

As we noted in D.Y., "[c]ertain categories of litigants in civil, probate, and family court matters, such as minors or persons determined to be mentally incapacitated, are afforded special protections which may include appointment of counsel and/or a fiduciary." 218 N.J. at 376 n.5, 95 A.3d 157 (citing examples of statutes, court rules, and case law providing for such appointment in certain settings).

Before this Court, J.J. raised a claim of ineffective assistance of appellate counsel, premised on the argument that he suffered prejudice because his appellate counsel did not raise the statutory and substantive due process self-representation claims that J.J. asserts in this Court. See DYFS v. B.R., 192 N.J. 301, 305-09, 929 A.2d 1034 (2007) (adopting standard set forth in Strickland v.Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987), for ineffective assistance of counsel claims asserted in termination of parental rights proceedings). In light of our recognition of a right of self-representation based on N.J.S.A. 30:4C-15.4, and our holding that J.J. did not timely, clearly, and unequivocally assert a right of self-representation in this matter, J.J. cannot meet the prejudice prong of the governing standard. See ibid. Accordingly, J.J.'s claim of ineffective assistance of appellate counsel fails.