# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1014-18T3
      A-1015-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

   Plaintiff-Respondent,

v.

S.C.M. and O.D.M.,

   Defendants-Appellants/
   Cross-Respondents.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.M.M., a Minor,

   Respondent/Cross-Appellant,

and

O.D.M., JR.,

   a Minor.

_____

Argued January 29, 2020 – Decided February 6, 2020

Before Judges Haas, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0083-18.

Ruth Ann Harrigan, Designated Counsel, argued the cause for appellant/cross-respondent S.C.M. (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Ruth Ann Harrigan, on the briefs).

Kathleen Ann Gallagher, Designated Counsel, argued the cause for appellant/cross-respondent O.D.M. (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Kathleen Ann Gallagher, on the briefs).

Cory Hadley Cassar, Designated Counsel, argued the cause for respondent/cross-appellant (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Cory Hadley Cassar, on the briefs).

Casey Jonathan Woodruff, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Casey Jonathan Woodruff, on the briefs).

Todd S. Wilson, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Todd S. Wilson, on the brief).

PER CURIAM

Defendants O.D.M. and S.C.M. appeal from an October 22, 2018 judgment of guardianship terminating their parental rights to their biological children, Owen and Eric.[1] O.D.M. collaterally argues the trial court's termination flowed, in part, from an order dated October 22, 2014, which wrongfully relieved the New Jersey Division of Child Protection and Permanency (Division) of the requirement to offer him services. We affirm, substantially for the reasons set forth in Judge James R. Paganelli's cogent, ninety-five-page written opinion of October 9, 2018.

We will not recite in detail the history of the interactions between the Division and defendants. Instead, we incorporate by reference the trial judge's extensive factual findings and legal conclusions. We add the following comments.

Owen was born in 2006 and Eric was born in 2009. The children were removed from S.C.M.'s care in November 2012, due to concerns over S.C.M.'s mental health. Since O.D.M. was in prison at the time of the removal, the children were placed in a non-relative foster home.

---

[1] We use fictitious names for the children and initials for the parents to protect the privacy of the parties and minors involved in this matter.

A-1014-18T3

Reportedly, both children exhibited significant behavioral issues while in placement. Owen was diagnosed with Oppositional Defiant Disorder (ODD); Eric was diagnosed with Attention Deficit/Hyperactivity Disorder, as well as ODD; and both children purportedly engaged in "sexualized behavior." By the time the 2018 guardianship trial commenced,[2] Owen resided in a therapeutic foster home and was scheduled to step down to a resource home, whereas Eric resided in a separate residential treatment facility.

At the guardianship trial, the Division offered the testimony of an adoption caseworker, as well as expert testimony from Dr. Peter DeNigris and Dr. Zachary Yeoman. No expert or fact witness was presented by defendants or the children's Law Guardian, although the Law Guardian opposed the Division's plan for termination of defendants' parental rights.[3] Judge Paganelli found each of the Division's witnesses credible.

---

[2] The 2018 guardianship action was preceded by a 2015 guardianship action, as well as an abuse and neglect action.

[3] After the guardianship trial ended, Owen was assigned a new Law Guardian. We granted Owen's Law Guardian the right to withdraw his cross-appeal as well as his cross-appellate brief, and leave to file a respondent's brief, based on his representation that Owen was placed in an adoptive home and now wishes to be adopted. Eric's Law Guardian has not withdrawn his cross-appeal, as Eric remains opposed to the termination of his parents' rights.

Dr. DeNigris supported the Division's plan for termination of S.C.M.'s parental rights. He found S.C.M.'s chronic mental illness impaired her ability to safely parent and she lacked insight into the factors preventing her from being a safe and stable parent. S.C.M. was hospitalized in February and March 2017 after she reported hearing voices and having paranoid thoughts. She continued experiencing hallucinations in September and November 2017 and needed to be stabilized on medication. Her psychological testing results confirmed the extent of her mental health issues and her elevated risk for child abuse.

Dr. DeNigris opined that S.C.M.'s continued use of marijuana impaired her judgment, particularly if used in conjunction with her psychotropic medication. Further, he testified that between the time he evaluated S.C.M. in 2015 and 2018, she had been evicted from her home and moved a number of times, reflecting her increased instability. He concluded S.C.M. had not maintained her previous progress and was unfit to parent her sons.

Dr. Yeoman evaluated O.D.M. in 2018 and concluded O.D.M. would not be able to independently parent his sons in the foreseeable future. Dr. Yeoman's primary concern was that O.D.M. lacked a consistent and sustained parental relationship with his sons, due to his criminal behavior and lengthy periods of incarceration. O.D.M. even admitted to Dr. Yeoman that he "does not know his

5

children and his children do not know him." Dr. Yeoman also opined that O.D.M.'s "long-term substantial addiction" posed a significant risk that O.D.M. would relapse once he was released from custody, particularly because he never underwent treatment for his addiction. Further, Dr. Yeoman reported that O.D.M.'s history of criminal behavior and incarceration presented a substantial risk of future harm to his children and demonstrated O.D.M.'s poor judgment. Dr. Yeoman added that O.D.M. lacked an understanding of his children's special needs. Therefore, Dr. Yeoman supported the Division's plan for termination of O.D.M.'s parental rights.

The adoption caseworker testified that, notwithstanding the children's special needs, he believed the Division could locate an adoptive home for each child. According to this caseworker, if the defendants' parental rights were terminated, the "pool of potential placements for [the children] would expand."

Judge Paganelli summarized the evidence presented at trial. Referencing the Division's efforts over a six-year period to provide defendants with various services, and aware no permanent placement was available to either child at that time, the judge found the Division proved all four prongs of the best interests test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a). Therefore, he

6

determined termination of defendants' parental rights was in their children's best interests.

Judge Paganelli credited Dr. DeNigris' testimony that S.C.M.'s chronic mental illness, which had repeatedly resulted in her hospitalizations, impaired her ability to safely parent. Further, the judge found S.C.M. failed to maintain adequate housing, lacked insight into her children's needs, and was unable to consistently treat her mental health and substance abuse issues.

After reviewing Dr. Yeoman's testimony regarding O.D.M., the judge concluded O.D.M. could not independently parent in the foreseeable future and that the children would not suffer harm if their relationship with O.D.M. was severed. Further, the judge found the Division engaged O.D.M. in reunification services, despite his "multiple incarcerations"[4] and his "refusal to participate in services." Judge Paganelli noted the Division scheduled psychological valuations, visitation, and relative assessments,[5] that O.D.M. participated in visitation when he was not incarcerated, and the Division scheduled him for an

---

[4] O.D.M. reported he was incarcerated five times between 2006 to 2009, 2010 to 2014, and October 2016 to the present.

[5] At the time of the guardianship trial, the assessment of O.D.M.'s sister as a potential resource was pending because she informed the Division she was planning to move "soon." Thus, the Division needed to assess her new home.

evaluation with Dr. DeNigris, which he failed to attend. Moreover, the judge found O.D.M. would not be released from prison until 2020, that he had no plan for employment, made no attempt to interact with the children through phone calls, letters, or any other manner for years, and admitted to Dr. Yeoman that he last saw the children in September 2015.

Mindful of the October 22, 2014 order relieving the Division of the requirement to offer O.D.M. services, Judge Paganelli found O.D.M. "unequivocally indicated that he was not planning for his children. This declaration was noted in several court orders." Judge Paganelli further observed that even after the Division was relieved of referring O.D.M. for services, O.D.M. appeared in court, but "never sought relief from the court's order or even indicated a change in his plan for the children." We note the October 22, 2014 order only relieved the Division of the obligation to provide services "until [O.D.M.] comes forward and requests services." There is no suggestion in the record that O.D.M. contacted the Division after October 2014 to request services, yet he was represented prior to, and during, the 2018 guardianship trial.

The reasonableness of the Division's efforts "is not measured by their success." In re Guardianship of D.M.H., 161 N.J. 365, 393 (1999). Instead, the Division's efforts must be viewed "with reference to the circumstances of the

individual case before the court, including the parent's active participation in the reunification effort." Id. at 390. Here, Judge Paganelli found O.D.M. failed to actively participate in the reunification effort and S.C.M. was unable to sustain any progress toward reunification, despite the Division's efforts to provide both parties with services. The record overwhelmingly supports the judge's findings.

Although O.D.M. argues the judge's decision to terminate his parental rights must be reversed because he was deprived of due process while without counsel, we are not persuaded. O.D.M. does not dispute he refused to complete paperwork to secure counsel before the 2018 guardianship action commenced. Also, he admits the Division provided services to him when he was not incarcerated, and that he was represented during the guardianship trial. Further, the October 22, 2014 order only relieved the Division of providing him with services until O.D.M. requested same. O.D.M. neither claims he requested services from the Division after the entry of this order, nor does he contest Judge Paganelli's finding that he made no attempt to contact or see the children after September 2015.

O.D.M. cites to N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123 (2018) and asserts his waiver of counsel prior to the guardianship trial was not clear and unequivocal. We note N.J.S.A. 30:4C-15.4(a) requires that:

[i]n any action concerning the termination of parental rights . . . the court shall provide the respondent parent with notice of the right to retain and consult with legal counsel. If the parent appears before the court, is indigent, and requests counsel, the court shall appoint the Office of the Public Defender to represent the parent.

Contrary to O.D.M.'s contentions, representation in a guardianship action is not compulsory. In fact, the R.L.M. Court noted that "[t]here is [] nothing mandatory about the statute's discussion of the assignment of counsel; if an indigent parent does not apply for an assignment, no attorney will be appointed to act on his or her behalf." R.L.M., 236 N.J. at 148 (citing N.J.S.A. 30:4C-15.4(a)). Here, O.D.M. was advised of his right to counsel and refused to complete the paperwork necessary to obtain a public defender. Still, he received the benefit of legal representation in the months leading up to, and throughout, the guardianship trial. Under these circumstances, O.D.M.'s due process argument fails.

Our review of the trial judge's decision is limited. We defer to his expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by his factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188

(App. Div. 1993)). Applying these principles, we conclude Judge Paganelli's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable.

To the extent we have not addressed other arguments raised by the defendants or Eric, we find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION