# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3250-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

B.M.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF S.M.
and G.M., minors.

_____

Submitted September 16, 2021 – Decided October 1, 2021

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FG-16-0021-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Lora B. Glick, Designated Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Toni Lynn Imperiale, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Rachel E. Seidman, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant B.M. appeals from a March 17, 2020 order terminating his parental rights in two children, then two and four years of age. After the trial, in which B.M. did not participate, Judge Imre Karaszegi, Jr., rendered a written decision and order finding the New Jersey Division of Child Protection and Permanency (Division) met by clear and convincing evidence all four prongs of the best interests of the child test embodied in N.J.S.A. 30:4C-15.1(a). We affirm, relying on Judge Kareszegi's thoughtful and cogent decision.

B.M. raises the following points on appeal:

POINT I

THE TRIAL COURT'S CONCLUSIONS PURSUANT TO N.J.S.A. 30:4C-15.1(a) WERE BASED UPON A MISAPPLICATION OF THE LAW AND FINDINGS OF FACT THAT ARE NOT SUPPORTED BY CREDIBLE EVIDENCE IN THE TRIAL RECORD.

A.  The Trial Court Erred In Holding That DCPP Made Reasonable Efforts To Reunify [B.M.] with [S.M.] And [G.M.] And That It Considered Alternatives To Terminating [B.M.'s] Parental Rights.

(i)  DCPP failed to prove, by clear and convincing evidence, that its efforts at reunification were reasonable.

(ii)  The trial court failed to properly consider alternatives to termination of [B.M.'s] parental rights.

B.  The Trial Court Erred In Holding That [B.M.] Caused And Will Continue To Cause Harm To [S.M.] And [G.M.], That He Is Unwilling Or Unable To Cure The Harm, Or That A Delay In Permanent Placement Will Add To The Harm.

(i)  DCPP failed to prove, by clear and convincing evidence, that [B.M.] caused harm to [S.M.] and [G.M.] or that he was unwilling or unable to cure that harm.

(ii)  DCPP failed to prove, by clear and convincing evidence, that the separation of [S.M.] and [G.M.] from their resource parents would cause them "serious and enduring emotional or psychological harm."

C.  The Trial Court Misapplied The Facts To The Law In Holding That Termination Of [B.M.'s] Parental Rights Will Not Do More Harm Than Good On A Record Based On Impermissible Embedded Hearsay And Devoid Of Expert Opinion, Reports Or Testimony.

3

DCPP'S HANDLING OF [B.M.'s] CASE CREATED THE GROUNDS ON WHICH IT SOUGHT TO TERMINATE HIS PARENTAL RIGHTS SUCH THAT TERMINATION VIOLATED [B.M.'s] SUBSTANTIVE DUE PROCESS RIGHTS AND, THUS, CANNOT STAND.

We conclude the arguments lack sufficient merit to warrant much discussion in a written opinion in light of the record and applicable law. See R. 2:11-3(e)(1)(E). The facts and circumstances can be briefly summarized.

The Division had been involved with the children's mother, S.M., at the time of her death on September 6, 2018. S.M. and B.M. did not reside as a family at that point, although B.M. later claimed he traveled from Atlantic City to S.M.'s Paterson home to assist her after the birth of the second child, and once again after the Division became involved with S.M. in August 2018.

S.M.'s tragic death from a drug overdose came to the attention of the authorities when a homeless man flagged down a passing patrol car to report that he had heard children crying in the woods and discovered them by their mother's lifeless body. The Division initiated legal proceedings on September 7, 2018. After the children were identified from photographs by a caseworker familiar with the family, they were placed in a resource home on September 10, 2018. The Division filed its complaint for guardianship on August 30, 2019.

The resource parents wish to adopt. One of the children receives specialized services because she is on the autism spectrum. They are doing well in the home.

While the litigation was pending, from September 7, 2018, to the termination judgment nearly two years later, the Division struggled to maintain contact with B.M. He appeared at Division offices once, on September 24. B.M. attended a court hearing in person on September 25, 2018, and visited the children on that same date—his only visit with them since their mother died. B.M. participated in telephonic proceedings on October 16, 2019, the other occasion he has appeared in court.

All the while, B.M. has been homeless and unemployed. He refused to give the Division an address, and the Division was unable to contact him for seven months. B.M. refused to participate in evaluations or even visitation. This, despite the Division's offer of transportation and motel accommodations so he could see the children.

The Division presented one witness, a caseworker, and many documents. The judge learned a bonding evaluation had been conducted between the children and their resource parents, and that the evaluator concluded terminating their relationship would likely cause lasting psychological harm. No report was

presented—he learned of the existence of the expert opinion in another document admitted into evidence. Although the judge referenced the evaluator's opinion, he did not rely upon the bonding evaluation. The court enumerated family that was contacted as alternative placements, and none expressed interest or were qualified to take the children.

The judge meticulously considered the proofs required to assess the statutory prongs. See N.J.S.A. 30:4C-15.1(a). Finding that B.M. failed to visit his children despite being provided with the means to do so, B.M. demonstrated he was unable or unwilling to establish a nurturing relationship with his children, given his absence from their lives. See N.J.S.A. 30:4C-15.1(a)(1). He was unable or unwilling to eliminate the harm he posed to the children because he refused to engage in court-ordered services, submit to evaluations, or make himself available for visitation. See N.J.S.A. 30:4C-15.1(a)(2). The Division's substantial efforts at reuniting B.M. with his children ultimately failed because he did nothing in response. See N.J.S.A. 30:4C-15.1(a)(3). The children are doing well in their foster home. See N.J.S.A. 30:4C-15.1(a)(4). Kinship legal guardianship was simply not an option—apart from the fact no suitable and willing family member could be located, the resource parents wish to adopt. See N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 513 (2004) ("[W]hen

the permanency provided by adoption is available, kinship legal guardianship cannot be used as a defense to termination of parental rights . . . ."); see also N.J. Div. of Youth & Fam. Servs. v. T.I., 423 N.J. Super. 127, 135-36 (App. Div. 2011) (holding resource family's "unequivocal" desire to adopt rendered kinship legal guardianship inappropriate because adoption was neither infeasible nor unlikely).

The trial judge ultimately concluded:

> the harm suffered from the termination of the parental relationship will not be greater than the harm caused by permanently disrupting the child's relationship with the foster parents as the children have been in placement for eighteen months and their current caretakers have provided for and are committed to provide for their needs going forward.

Our review of the decision is limited and deferential. We do not disturb a trial judge's factual findings so long as they are supported by substantial credible evidence. See N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). The record contains such evidence, which supports the judge's legal conclusions. The Division clearly and convincingly established it had proven each statutory element as a matter of law. See N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 145 (2018).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

8