# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4778-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.U.B.,

     Defendant,

and

J.E.C.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF C.I.B.,

     a Minor.

_____

Submitted April 8, 2019 – Decided April 18, 2019

Before Judges Sabatino and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0164-14.

Joseph E. Krakora, Public Defender, attorney for appellant (James P. Gentile, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Lisa J. Rusciano, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

This Title 30 guardianship matter brought by the Division of Child Protection and Permanency ("the Division") returns to our court following a limited remand we ordered in a published opinion dated May 22, 2017. See N.J. Div. of Child Prot. & Permanency v. T.U.B., 450 N.J. Super. 210 (App. Div. 2017). In our opinion, we held that the special Title 9 hearsay exception codified at N.J.S.A. 9:6-8.46(a)(4) allowing the admission of certain out-of-court statements by children does not extend to Title 30 termination cases. Id. at 230. Because the Family Part in this case admitted at trial and considered such inadmissible hearsay, we remanded the case for reconsideration, directing the trial court to ignore the hearsay statements in its analysis.

On remand, the judge who had presided earlier over the guardianship trial reaffirmed her original determination to terminate the parental rights of defendant J.E.C. ("the father") as to his son, C.I.B. ("Calvin").[1] The father now appeals that second judgment of termination. T.U.B. ("the mother") did not appeal the initial judgment terminating her parental rights and was dismissed from the litigation on remand. We affirm.

I.

The Facts

We summarize pertinent facts from the record, most of which were presented in greater detail in our published opinion. Id. at 215-26.

Calvin was born in May 2008. The Division received a referral upon his birth. The mother has eight other biological children with several different fathers. The father also has other biological children. Id. at 215. The Division had received several reports of abuse and neglect about the mother's children prior to Calvin's birth. Ibid.

___

[1] We use initials and pseudonyms to protect the privacy of the minor. R. 1:38-3(d)(12).

In July 2009, the father was granted temporary residential custody of Calvin, with the mother's consent. The father resided with his paramour T.C., T.C.'s two daughters, and T.C.'s son. Id. at 216.

In June 2012, the father was ordered to stay out of T.C.'s home, at which time the court was apparently unaware that Calvin was also then residing there. Id. at 217. Later that month, the Division received a referral from an East Orange police officer who had responded to a call concerning T.C.'s home because the mother had gone there to take physical custody of Calvin. The officer had taken T.C. and Calvin to the police station because the mother was demanding physical custody and the father's whereabouts were then unknown. Id. at 217.

On June 22, 2012, the Division conducted a Dodd[2] removal of Calvin from T.C.'s residence. Id. at 218. The trial court awarded the Division custody of Calvin four days later. Ibid.

In August 2012, Calvin was evaluated at the Metro Regional Diagnostic and Treatment Center ("RDTC") at Children's Hospital of New Jersey. The RDTC reported that the child was "developmentally delayed in communication

---

[2] A "Dodd removal" refers to the emergency removal of a child without a court order, pursuant to the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

skills, fine motor skills, problem solving skills, and personal social skills." Ibid. According to the RDTC report, Calvin had been displaying "significant emotional and behavioral problems including temper tantrums, defiance, and oppositionality." Ibid.

In September 2012, another evaluation of Calvin was performed at the RDTC. Ibid. This evaluation concluded Calvin exhibited "[s]low growth – possible failure to thrive." Ibid. The RDTC recommended, among other things, that Calvin continue to see a nutritionist, that his father participate in those appointments, and that his father receive training on parenting disciplinary methods as well as skills training to improve Calvin's eating behaviors and food intake. Ibid.

The Family Part ordered weekly visitation between the father and Calvin in June 2012. The Division accordingly referred the father to a program that included components for therapeutic supervised visitation, a parenting group, and skills training. The father began such weekly visitation in August 2012.

As of late October 2012, the father was compliant with his visitation with Calvin. However, after that point, the father became inconsistent with his visitation, and missed numerous scheduled visits. The record reflects the

father's last visitation with Calvin was in 2014. Given this failure, the father's visitation rights to Calvin were eventually suspended on October 19, 2015.

The father was referred to more parenting skills group sessions after the filing of the Division's guardianship complaint in December 2013, but he failed to attend. The father was again referred to parenting skills classes at another location. He attended the intake session in March 2014, but failed to attend any further sessions and was discharged from that program five weeks later.

During the course of the guardianship litigation, the Division repeatedly scheduled the father for psychological evaluations by Elizabeth M. Smith, Psy.D., approximately five times. The father missed all of these appointments.

The Trial Proofs

The Division presented four witnesses at the trial: Dr. Smith, who is an expert in the fields of psychology and bonding; Emerald Irby, Calvin's caseworker and custodian of the records; Ines Perez-Nin, a Division supervisor who testified about hearsay statements by T.C.'s children alleging that the father had sexually abused them; and Barry A. Katz, Ph.D., an expert in the fields of psychology, psychosexual evaluations, sexual risk assessment and parenting.[3]

---

[3] Because we determined in our published opinion that the hearsay statements were inadmissible, we do not expound upon or consider those allegations here.

The father presented testimony from Laural Montgomery, Calvin's therapist at Children's Specialized Hospital. The father did not testify and no other witnesses testified on his behalf.

Dr. Smith performed bonding evaluations between Calvin and his resource parent as well as between Calvin and the mother. Dr. Smith did not perform a bonding evaluation with the father because he missed several scheduled appointments.

Dr. Smith testified that Calvin was "basically confused" and "doesn't know where he belongs." Calvin repeatedly stated to her that he did not have a father anymore. According to Dr. Smith, Calvin "wants to belong somewhere" and was "devastated by not being part of [his] family." Dr. Smith testified that Calvin "needs to have a stable, safe home."

Caseworker Irby testified about the father's compliance record with services and visitation. She also noted that the father did not have appropriate housing because he lived with T.C., who was a substantiated perpetrator and did not have custody of her own children.

---

Nor is there a need in this opinion to discuss the trial testimony of Dr. Katz or Perez-Nin, which concerned those hearsay allegations of sexual abuse.

A-4778-17T2

In June 2015, after the testimony of Dr. Smith, Dr. Katz, Perez-Nin, and partial testimony by Irby was presented, the Division reported that Calvin had been removed from his resource home, where he had been living for around three years, due to concerns about abuse. After investigation, the Division determined that Calvin's resource mother had used excessive corporal punishment on Calvin. Calvin was accordingly placed in a different resource home.

Irby resumed her testimony in January 2016. She recounted that Calvin was living in the second of two successive resource homes since the removal due to abuse. He had been living with that most recent resource family since August 2015, where he had "shown great improvement, both at school and in the resource home." She noted that Calvin was receiving behavioral health services.

Irby described the Division's plans for what is known as "select home adoption," the process for seeking adoptive homes, and the likelihood of finding Calvin a placement. She indicated that, at that time, there were eight potential homes for Calvin, and four additional homes if he were made legally free through the termination of parental rights. She explained that the pool for adoption generally becomes larger after such termination. She predicted the

Division could locate an adoptive home for Calvin if he became legally free. According to Irby, none of Calvin's needs presented a significant problem with finding a home, especially with Calvin's more recent behavioral improvements.

In the defense's case, Calvin's therapist, Montgomery, testified that Calvin's treatment goals were to improve his compliance with directions from caregivers, teachers, and herself, as well as to improve his mood regulation and social interaction. Regarding a prior recommendation she made that the father not be allowed visitation with Calvin, Montgomery testified Calvin had been "in the midst of an acute disruption from one placement to another," and had become "highly dysregulated." This disruption manifested by Calvin banging his head against a wall and other behaviors requiring a session to end early and assistance to get Calvin safely to a car. Montgomery stated her concerns about Calvin's well-being if visitations with the father were resumed had been based on Calvin's instability at the time, the disruption in Calvin's placement, the father's history of inconsistent visitation, and the ongoing termination proceedings that raised the specter that Calvin would not see his father again.

The trial judge issued an initial decision on February 10, 2016, terminating both the father's and mother's parental rights to Calvin. In her decision, the judge stated, among other things, that she could "not ignore" the hearsay

allegations by T.C.'s daughters that they have been sexually abused by Calvin's father. T.U.B., 450 N.J. Super. at 244. The father appealed the court's decision, but the mother did not.

The Remand

In our published opinion, we remanded this case on prongs one, two, and four of the statutory factors because the first judgment terminating parental rights had relied on inadmissible hearsay evidence of sexual abuse by the father of T.C.'s daughters. Id. at 214. We gave the judge express instructions to "determine whether, if the hearsay allegations of sexual abuse are disregarded, she would still conclude that the Division met its burden of proving statutory prongs one, two, and four by clear and convincing evidence." Id. at 245. In doing so, we afforded the judge "the discretion to permit updated or other additional relevant proofs from the parties, including updated expert opinions. Such discretion, however, shall be exercised subject to the condition that the Division may not attempt to re-prove the truth of the girls' hearsay allegations by other means." Id. at 246. However, we did affirm the trial court's "discrete findings with respect to prong three concerning the provision of services and the absence of other suitable relatives to serve as caretakers." Id. at 214.

On remand, the trial judge initially inquired of the parties as to their positions concerning any need for updated or other additional relevant proofs. The Division maintained that the record from the original trial was sufficient to terminate the father's parental rights, but the father sought to introduce a defense psychological evaluation that was conducted post-remand. The father also requested renewed visitation with Calvin, a request that the Division and Law Guardian opposed and the trial judge denied.

The judge requested the Division contact Dr. Katz to obtain an updated expert opinion that did not consider the inadmissible hearsay evidence. The Division reported back to the judge that Dr. Katz would need to conduct an updated full evaluation of the father to render such an opinion. Consequently, the judge ordered the father to attend such an evaluation. The judge emphasized to the father, who was attending the conference by phone, the importance of him appearing for this evaluation. The judge specifically informed the father that the court would not accept the father's recent psychological evaluation if the judge was not also able to consider an evaluation from the Division.

Despite these admonitions, the father failed to attend the post-remand evaluation scheduled with Dr. Katz. Accordingly, the trial judge barred the

11

admission of the new evaluation by the father's expert, and proceeded to decide the remand without any further evidence.

The Present Appeal

This appeal by the father from the remand ensued.  He argues that because of the Division's failure to supplement the record on remand, there is not adequate substantial and credible evidence to support the trial court's post-remand decision as to prongs two and four.[4]

II.

It is well settled that the termination of a parent's rights to raise his or her children raises issues of a constitutional dimension.  See, e.g., In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999); In re Guardianship of J.C., 129 N.J. 1, 9-10 (1992).  The Legislature has recognized the importance of this constitutionally protected relationship between a parent and a child by imposing a high burden upon the Division to terminate those rights in a guardianship case. That burden calls for the Division to prove, by clear and convincing evidence, the following four prongs under N.J.S.A. 30:4C-15.1(a):

---

[4]  The father does not dispute the court's findings as to prong one.  As we have already noted, the finding on prong three was conclusively upheld in our earlier opinion.

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a); see also N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-11 (1986) (reciting the four controlling standards later codified in Title 30).]

In considering the father's arguments on appeal, we must be cognizant that our scope of appellate review is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "Appellate courts must defer to a trial judge's findings of fact if supported by adequate, substantial, and credible evidence in the record." Ibid. An appellate court must also defer to the trial court's credibility determinations, and to the Family Part's special expertise in the field

13

of domestic relations. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552-53 (2014). That said, the trial court's interpretation of the law and legal findings are reviewed pursuant to a de novo standard. Id. at 552.

Having applied these well-settled principles, we affirm the trial court's rulings on remand and the corresponding renewed final judgment of guardianship. We do so substantially for the sound reasons articulated by the trial judge. We add a few amplifying comments.

There is substantial credible evidence in the record to support the trial court's findings under the disputed prongs two and four and the resultant termination of the father's parental rights. As the trial court detailed, there is abundant proof that the father is unlikely to eliminate the harm to Calvin. His poor track record as a parent offers little reason to believe he will provide a secure and safe home for Calvin.

The trial court was entitled to accept the Division's expert's testimony as persuasive. City of Long Branch v. Liu, 203 N.J. 464, 491 (2010) (explaining the fact finder has the role of assessing the credibility and weight to be given to expert testimony); Angel v. Rand Express Lines Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (same). Moreover, a child's interests in permanency must override a parent's desire to prolong the process towards a doubtful

14

reunification.  N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146-47 (2018) (emphasizing the importance of prompt judicial determinations of issues in cases involving children awaiting permanency);  N.J. Div. of Youth & Family Servs. v. S.F., 392 N.J. Super. 201, 209-10 (App. Div. 2007) (same).

We are unpersuaded by the father's claim that the absence of updated information adduced on remand signifies there is not enough evidence in the record to support the trial court's decision.  The remand in this case was for the discrete purpose of allowing the trial judge to "determine whether, if the hearsay allegations of sexual abuse are disregarded, she would still conclude that the Division met its burden of proving statutory prongs one, two, and four by clear and convincing evidence."  T.U.B., 450 N.J. Super. at 245.  As our published opinion clearly stated, the trial court possessed "the discretion to permit updated or other additional proofs from the parties."  Id. at 246.  The court did not misapply that discretion on remand, particularly given the circumstances presented here.

There is ample evidence to support the trial court's finding that the father "is unwilling or unable to eliminate the harm" facing the child.  Prior to the entry of the initial final judgment, the father had failed to complete recommended services and he frequently did not attend scheduled visitations, particularly as

15

time passed. The father's continuation of his pattern of non-compliance on remand, illustrated by failing to attend his scheduled examination with Dr. Katz, despite the court's clear admonitions, further supports the court's decision. In addition, although the record does not include any updated information about the father's living situation at the time of the remand, the father had a history of failing to provide adequate housing.

We further uphold the trial court's decision not to renew the father's visitation with Calvin, given the length of time that had passed since the last visitation, the limited scope of the remand, and the opposition of the Division and the Law Guardian to such visits.

Additionally, we reject the father's argument that the Division was required to provide him with services during the remand period. The remand was prompted by a specific and narrow evidential issue concerning hearsay allegations by T.C.'s children that did not affect the question of reasonable services. Moreover, in the first appeal we specifically affirmed "the court's discrete findings with respect to . . . the provision of services and the absence of other suitable relatives to serve as caretakers." T.U.B., 450 N.J. Super. at 214.

Lastly, as to prong four of the best interests test, there is sufficient credible evidence to support the trial court's finding that termination of the father's

parental rights will not do Calvin more harm than good. Although Calvin remains in select home adoption status, the caseworker's testimony at the guardianship trial indicated that the Division would have more resources available to find an adoptive home for Calvin after the termination of parental rights. Moreover, Calvin's Law Guardian during the remand proceedings repeatedly – and rightly – noted the importance of achieving permanency for Calvin. See R.L.M., 236 N.J. at 146-47.

The trial court reasonably concluded that the termination of the father's parental rights should be beneficial to Calvin, given the father's history of non-compliance, Dr. Smith's expert testimony, and the prospect that termination will allow the Division to make full use of its resources to find an adoptive home for Calvin. Prong four was therefore met.

In sum, we discern no basis to set aside the trial court's well-supported and well-reasoned decision to terminate the father's parental rights.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4778-17T2