# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2491-24

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

P.H-I-J.N.,

     Defendant-Appellant,

and

C.W.F.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF R.T.F.,
a minor.

_____

Submitted October 22, 2025 – Decided February 4, 2026

Before Judges Currier, Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0102-25.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Catherine Wilkes, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor R.T.F. (Meredith A. Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant, P.H-I-J.N. (Patricia) appeals from a Family Part order terminating her parental rights to R.T.F. (Richard).[1] Patricia exclusively argues the guardianship judgment must be reversed because the Division of Child Protection and Permanency (Division) did not provide sufficient rehabilitative services to Patricia when she was involved with the Division as a child and before she aged out of the Division's custody. After a review of the record and the controlling legal principles, we affirm.

---

[1] We use initials and pseudonyms to identify the parties, the child, and others to protect their privacy and because records relating to Division proceedings held under Rule 5:12 are excluded from public access under Rule 1:38-3(d)(12).

I.

Richard, the child at the center of this appeal, was born to Patricia and defendant C.W.F. (Charles)[2] in May 2023. Prior to Richard's birth, Patricia was involved with the Division as a minor. Her childhood was marked by significant trauma and instability, including sexual abuse, physical discipline from family members, and the death of her mother from sickle cell anemia shortly before Patricia's sixteenth birthday. After her mother's death, Patricia struggled with anxiety and substance abuse, including the alleged illegal use of marijuana, alcohol, and Ecstasy. When Patricia turned eighteen, she aged out of the Division's care. One year later, Richard tested positive for marijuana at his birth.

Patricia informed the Division that she had ingested two tetrahydrocannabinol gummies two weeks before Richard was born and disclosed past alcohol use during her pregnancy. She agreed to undergo a substance abuse evaluation and accept additional services from the Division.

A few weeks later, the Division was notified that Patricia had been involved in a domestic violence incident with Charles. Patricia told the Division she intended to obtain a restraining order against Charles and agreed to

---

[2] The court also terminated Charles' parental rights under its order. Charles has not appealed from the order.

A-2491-24

participate in a psychological evaluation and mental health treatment. She rescheduled her substance abuse screening due to a court appearance to finalize a temporary restraining order (TRO) against Charles but subsequently missed the rescheduled screening and three additional appointments. She ultimately dismissed the TRO.

Patricia was hospitalized a few weeks later because of a liver infection. While in the Jersey City Medical Center, Patricia requested that T.H. (Theresa), Richard's paternal aunt, care for Richard during her hospitalization. Although Patricia stated she had not used illegal substances while caring for Richard, she reported her hospitalization was due to excessive alcohol consumption, and acknowledged testing positive for amphetamines, alcohol, and marijuana.

Upon discharge from the hospital, Patricia had another verbal disagreement with Charles at her brother's home and reported consuming alcohol. The Division contacted the shelter where Patricia was living and learned she was not adhering to that program's requirements. She missed scheduled counseling sessions, violated her curfew, concealed alcohol in her room, and tested positive for marijuana and alcohol. Patricia's drug use persisted.

A-2491-24

On July 27, 2023, the Division removed Richard from Patricia's care because of her drug use, the history of domestic violence with Charles, and Richard's young age. Both parents asked Theresa to care for Richard.

Over the following months, the court required Patricia to attend domestic violence counseling and ordered Charles to resolve an open warrant and complete parenting training. The court also continued supervised parenting time and directed the Division to provide transportation, housing, and communication support for both parents. Both Patricia and Charles were ordered to undergo psychological and substance abuse evaluations, and the Division was directed to facilitate necessary parenting and rehabilitative resources. After the court found Patricia and Charles were unable to care for Richard properly, it ordered increased support services to both parents and made early intervention services for Richard available to them.

Regular compliance hearings were held, with the court continuing to order psychological, psychiatric, and substance abuse evaluations, therapy, and participation in domestic violence and parenting skills programs. The Division provided both parents with transportation, housing assistance, and technology access. Parenting time for both Patricia and Charles was periodically reduced

5

in response to compliance issues, and they were required to maintain regular communication with the Division.

Despite these interventions, Patricia consistently failed to comply with required evaluations, treatment, and ordered programs, or to maintain contact with the Division. Her participation was sporadic and was limited primarily to certain evaluations and occasional visits with Richard.

Ultimately, the court entered a permanency order and accepted the Division's plan to terminate Patricia's and Charles' parental rights and permit Theresa to adopt Richard. The trial court specifically found that Patricia failed to comply with reunification services, and acknowledged the Division's reasonable efforts, which included referrals for psychological, psychiatric, and substance abuse evaluations; supervised visitation; substance rehabilitation opportunities; housing assistance; transportation; domestic violence services; technology access; and family team meetings.

The Division decided to pursue guardianship of Richard and dismissed the protective services litigation accordingly. The Law Guardian, representing Richard, supported the Division's position. The two-day trial included testimony from the Division's caseworker, the Division's expert witness Allison

Strasser Winston, Ph.D., a psychologist, and Theresa.  Patricia did not attend the trial.

In a comprehensive fifty-nine-page written opinion, the trial court analyzed the matter under the statutory four-prong test set forth in N.J.S.A. 30:4C-5.1(a) and granted the Division's application for guardianship of Richard. The court held the Division provided clear and convincing evidence to satisfy each prong of the test.

First, the judge found Richard's safety, health, or development was or would continue to be endangered by the parental relationship.  N.J.S.A. 30:4C-15.1(a)(1).  The court found the combination of Patricia's untreated mental health disorders, persistent substance abuse, and ongoing exposure to domestic violence created an unsafe and unstable environment for Richard and seriously impaired his safety, health, and development.  These issues remained unremedied throughout the case.

Second, the trial judge found Patricia was unwilling or unable to eliminate the harm facing Richard, she was unable or unwilling to provide a safe and stable home for him, and the delay of permanent placement would add to that harm. N.J.S.A. 30:4C-15.1(a)(2).  According to the trial court, Patricia had not sufficiently addressed nor overcome the challenges that necessitated Richard's

A-2491-24

removal, and she had not engaged in meaningful treatment or services. The court specifically found any delay in permanency would further harm him whose only stable environment had been in Theresa's care.

Third, the trial judge held the Division made reasonable efforts to provide services to help Patricia correct the circumstances which led to Richard's placement outside the home. N.J.S.A. 30:4C-15.1(a)(3). The court also considered alternatives to termination of parental rights. Ibid. The court found the Division repeatedly provided referrals and facilitated access to services for substance abuse, mental health treatment, parenting support, domestic violence counseling, and housing assistance. The Division also explored kinship legal guardianship, N.J.S.A. 3B:12A-1 to -6, through the resource parent.

Finally, the court found termination of Patricia's and Charles' parental rights would not do more harm than good. N.J.S.A. 30:4C-15.1(a)(4). Expert testimony provided by Dr. Winston established that Richard's needs for stability, safety, and permanency were best met in his current placement and that reuniting him with either Patricia or Charles posed a risk of enduring emotional and physical harm to him. Ultimately, the court found that no viable evidence suggested that maintaining the parental relationship served Richard's best interests.

A-2491-24

Only Patrica appealed.

Before us, she raises this single issue:

> THE JUDGMENT OF GUARDIANSHIP SHOULD BE REVERSED BECAUSE [THE DIVISION'S] REASONABLE EFFORTS OFFERED PURSUANT TO N.J.S.A. 30:4C-15.1(a)(3) DID NOT COMPENSATE FOR ITS FAILURE TO PROVIDE SERVICES TO [PATRICIA] PURSUANT TO N.J.S.A. 30:4C-2.3 PRIOR TO HER AGING OUT OF [THE DIVISION'S] CUSTODY AT AGE EIGHTEEN.
>
> A. [The Division] Failed to Provide the Appropriate Services to [Patricia] After Age Eighteen Pursuant to DCF CP&P-III-A-1-500.
>
> B. [The Division] Had A Duty to Provide Services to [Patricia] After Age Eighteen Pursuant to N.J.S.A. 30:4C-2.3 to Address Her Significant Childhood Trauma.
>
> C. Due to the Unique Circumstances of [The Division's] Failure to Provide Services to [Patricia] Prior to Her Aging Out of [The Division's] Custody[, The Division] Should Extend the Time Past the Twelve-Month Requirement of N.J.S.A. 30:4C-61.2(a)(2).

II.

A.

Our standard of review is well-settled. In Title 30 cases, we will neither second-guess nor substitute our judgment for that of the Family Part provided its factual findings are "grounded in substantial and credible evidence in the

9                                                                                  A-2491-24

record." N.J. Div. of Child Prot. & Permanency v. D.C.A., 256 N.J. 4, 19 (2023). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "We accord deference to fact[-]findings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012). "[A] trial court's factual findings 'should not be disturbed unless they are so wholly unsupportable as to result in a denial of justice.'" N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We owe no deference to a judge's legal conclusions which we review de novo. N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017).

Guided by these standards, we conclude the trial court's factual findings are amply supported by the credible evidence in the record and the judge's ultimate legal conclusion was correct.

B.

In considering whether to terminate parental rights, the trial court applies a best interests test set forth in N.J.S.A. 30:4C-15.1(a) which requires consideration of these four prongs:

> (1) [t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) [t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) [t]he [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) [t]ermination of parental rights will not do more harm than good.

The Division must prove each prong by clear and convincing evidence. N.J. Div. of Child Prot. & Permanency v. D.H., 469 N.J. Super. 107, 115 (App. Div. 2021). These prongs "are not discrete and separate;" they overlap to inform a more general inquiry that the termination of parental rights is in a child's best interests. N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 145 (2018) (quoting In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999))

(internal quotation marks omitted). "'The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent.'" N.J. Div. of Youth & Fam. Servs. v. T.S., 417 N.J. Super. 228, 249 (App. Div. 2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 108 (2008)). "'[P]arental fitness is the key to determining the best interests of the child.'" N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 170 (2010) (quoting K.H.O., 161 N.J. at 348).

"Parents have a constitutionally protected right to maintain a relationship with their children." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007). That right, however, "is not absolute" and is limited "by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447. In guardianship and adoption cases, such as here, it is well-established that "[c]hildren have their own rights, including the right to a permanent, safe[,] and stable placement." N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). We acknowledge "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions

in anticipation of reuniting with the child." Ibid. Thus, a parent's interest must, at times, yield to the State's obligation to protect children from harm. See N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009).

C.

On appeal, Patricia does not contest that the Division proved statutory prongs one, two, and four by clear and convincing evidence. Therefore, we address only her challenge to the proofs of prong three.

Patricia argues the Division should have provided her with services while she was in its custody as a child herself and after she aged out of its custody to address her childhood trauma, depression, and anxiety. She contends that since that assistance was neither coordinated nor individualized to her specific needs, any "realistic possibility" for successful reunification with Richard was impossible. See N.J. Div. of Youth and Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 489 (App. Div. 2012). We find this argument unavailing for the following reasons.

First, Patricia did not raise this issue before the trial judge to permit the parties and the judge to consider the contentions. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised [before the trial court]." State v. Galicia, 210 N.J. 364, 383 (2012). "For sound

13

jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). We do not "consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div 1959)). Issues raised for the first time on appeal need not be considered because they "never were subjected to the rigors of an adversary hearing, and . . . their legal propriety [was never] ruled on by the trial court." Robinson, 200 N.J. at 18-19. Despite the numerous opportunities during the trial to address this issue with both the Division's caseworker and the Division's expert, Patricia did not raise this issue before the trial court. We, therefore, have no record to review.

Second, we note the Division has a statutory duty to provide services to a youth previously under the Division's custody as that child ages out of the foster care system. N.J.S.A. 30:4C-2.3. According to that statute, the Division must

provide services to an individual from ages eighteen to twenty-one, provided he or she received Division services after the age of sixteen and had not refused nor requested termination of services, and the Division determined that services would be in the child's best interests and would assist him or her to become independent. Ibid.

In L.J.D., we concluded the Division possessed a "heightened burden" to provide "satisfactory services to aid the development of the child-parent's maturation and necessary skills to adequately parent . . ." to a fourteen-year-old mother who was then in the Division's custody. L.J.D., 428 N.J. Super. at 489. However, we also held there was "no statutory authority or precedent holding that the Division's failure to provide services to a child under its care can be considered in a subsequent guardianship matter involving that same child in her later capacity as a parent when assessing the adequacy of services required under Title 30." New Jersey Div. of Child. Prot. & Permanency v. N.C.M., 438 N.J. Super. 356, 369 (App. Div. 2014). For this reason, Patricia's argument is rendered infirm.

Additionally, Patricia's claim that additional support at age eighteen would have impacted the outcome of this case is speculative and overlooks the undisputed fact that, from the time Patricia became a parent at age nineteen, the

A-2491-24

Division provided ample services to help stabilize her life and to address the circumstances that led to Richard's removal. Patricia failed to engage consistently with or to comply with these rehabilitative efforts. It is equally speculative to suggest that any additional, unspecified services would have produced a different result, given her pattern of noncompliance throughout the proceedings. Rather, she continued to struggle with substance dependence, untreated mental health issues, and was involved in a volatile relationship marked by domestic violence. We discern no error in the court's analysis of prong three.

We find the trial judge's findings on the remaining three prongs of N.J.S.A. 30:4C-15.1(a) are amply supported by the record. To the extent that we have not addressed any of Patricia's arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16